IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BARBARA EWING, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:10-CV-1211-O |
| | § | |
| IRON TIGER LOGISTICS, INC., et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is Defendant Iron Tiger Logistics, Inc.'s Motion for Partial Summary Judgment and Brief in Support (ECF No. 23), Plaintiffs' Response (ECF No. 28), and Defendant's Reply (ECF No. 34). Having reviewed the motion and the applicable law, the Court finds that the motion should be and is hereby **GRANTED**.

Defendant Iron Tiger Logistics, Inc. ("Iron Tiger") seeks summary judgment on Plaintiffs' claim for exemplary damages. *See* Def.'s Mot. Partial Summ. J. 2, ECF No. 23. Defendant contends that there is no evidence of gross negligence, rendering exemplary damages unavailable, on two grounds: 1) considered objectively, Defendant's actions or omissions did not involve an extreme degree of risk; and 2) Defendant did not have actual, subjective awareness of the risk involved. *Id.* at 4. Plaintiffs respond that there is a genuine issue of material fact as to whether Defendant Iron Tiger's conduct objectively involved an extreme degree of risk and as to whether Defendant had actual, subjective awareness of that risk. *See* Pls.' Resp. Def.'s Mot. Partial Summ. J. 27-28, ECF No. 28.

1

**I.   FACTUAL BACKGROUND**[1]

At approximately 11:23 a.m. on the morning of March 18, 2010, Defendant Kenneth Dewayne Bunton rear-ended Plaintiff Geoffrey Ewing II on U.S. Highway 75, severely injuring Plaintiff Ewing. *See* Pls.' Resp. Def.'s Mot. Partial Summ. J. 5, ECF No. 28. Defendant Bunton is a truck driver employed by Defendant Iron Tiger and was driving a truck for Iron Tiger at the time of the collision. *Id.* Plaintiffs allege that Defendant Bunton was asleep or severely fatigued at the time of the accident due to failure to abide by Federal Regulations. *Id.* at 5-6. Defendant Bunton was on duty from 8 a.m. on March 16, 2010 through 11:00 p.m. that night. *Id.* at 8. One of the trailer's under Defendant Bunton's charge caught fire shortly thereafter, and he attended to that issue from 11:46 p.m. through 12:38 a.m. on the morning of March 17, 2010. *Id.* Defendant Bunton was back on duty at 7:03 a.m., following only six and a half hours of off-duty time, and stayed on duty until approximately 3:30 p.m. on March 17, 2010. *Id.* Defendant Bunton went back on duty at 12:00 a.m. on the morning of March 18, 2010 and stayed on duty until the collision took place at approximately 11:23 a.m. *Id.*

**II.   PROCEDURAL BACKGROUND**

Plaintiffs filed this action in state court on May 21, 2010. *See* ECF No. 1. Defendants removed the action to this Court on June 17, 2010. *Id.* Plaintiffs seek exemplary damages based on both Defendants' alleged gross negligence. *See* Am. Compl. ¶¶ 8.00, 8.03, ECF No. 19. Defendant Iron Tiger filed its Motion for Partial Summary Judgment on the issue of gross negligence on December 17, 2010. *See* ECF No. 23. The motion has been fully briefed and is now

---

[1] The Court notes that the facts are presented in the light most favorable to the nonmoving party on this Motion for Summary Judgment. *See, e.g. Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

ripe for determination.

## III.   LEGAL STANDARDS

### A.   Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Fed. R. Civ. P. 56; *see also Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] Fed. R. Civ. P. 56(a); *see also Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). "[T]he substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party bears the burden of showing that summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Id.*; Fed. R. Civ. P. 56. The Court must review the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

When reviewing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255.

---

[2] This language reflects the amendments to the Federal Rules which came into effect on December 1, 2010. As the Committee Note to Rule 56 makes clear, the new language "carries forward the summary-judgment standard expressed in former subdivision (c)." *See* Fed. R. Civ. P. 56(a) advisory committee's note (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

3

"[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Id.* "When a heightened proof standard will apply at trial, that standard controls at the summary judgment stage." *Perez Librado v. M.S. Carriers, Inc.*, No. 3:02-CV-2095-D, 2004 WL 1490304, at *2 (N.D. Tex. June 30, 2004) (citing *Anderson*, 477 U.S. at 254). Under Texas law, a plaintiff must prove gross negligence by clear and convincing evidence. *See* Tex. Civ. Prac. & Rem. Code § 41.003(a). The clear and convincing evidence standard "requires that plaintiffs adduce evidence that is 'sufficient to make the existence of the facts highly probable,' not merely evidence that is 'sufficient to make the existence of fact more probable than not, as required by the preponderance standard.'" *Id.* at *2 (quoting *Foley v. Parlier*, 68 S.W.3d 870, 880 (Tex. App.– Fort Worth 2002, no pet.)). Therefore, even on summary judgment, the evidence "must be 'sufficient to produce in the mind of the fact finder a firm belief or conviction as to the truth of the allegation sought to be established.'" *Id.* (quoting *Foley*, 68 S.W.3d at 880 (collecting cases)); *see also In re J.F.C.*, 96 S.W.3d 256 (Tex. 2002).

  B. <u>Exemplary Damages & Gross Negligence</u>

"'Exemplary Damages' means any damages awarded as a penalty or by way of punishment but not for compensatory purposes. Exemplary damages are neither economic nor noneconomic damages. 'Exemplary damages' includes punitive damages." *See* Tex. Civ. Prac. & Rem. Code § 41.001(5). "[E]xemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence." *See* Tex. Civ. Prac. & Rem. Code § 41.003(a). "'Gross negligence' means an act or omission: (A) which when viewed

4

objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others and (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others." *See* Tex. Civ. Prac. & Rem. Code § 41.001(11). "The first element, 'extreme risk,' means not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2002) (quoting *Mobile Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998)). "The second element, 'actual awareness,' means that the defendant knew about the peril, but its acts or omissions demonstrated that it did not care." *Id.* at 785 (quoting *Ellender*, 968 S.W.2d at 921).

"Evidence of simple negligence is not enough to prove either the objective or subjective elements of gross negligence." *Ellender*, 968 S.W.2d at 921 (citing *Univ. Servs. Co. v. Ung*, 904 S.W.2d 638, 641 (Tex. 1995)). The first prong of the statutory test "focuses on the objective nature of [the] defendant's conduct, distinguishing gross negligence as being different in degree or quantity from ordinary negligence." *Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 325 (Tex. 1993). "The 'conscious indifference' test focuses on the defendant's mental state, and thus 'stresses a qualitative distinction from ordinary negligence.'" *Id.* (quoting John Roberson, Comment, *Exemplary Damages for Gross Negligence: A Definitional Analysis*, 33 BAYLOR L. REV. 619, 622 (1981)). "'What lifts *ordinary* negligence into *gross* negligence is the mental attitude of the defendant . . . the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrated that he didn't care.'" *Id.* at 325-26 (quoting *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 922 (Tex. 1981)). "Circumstantial evidence is sufficient to prove either element." *Lee*

5

*Lewis Constr.*, 70 S.W.3d at 785. "Some evidence of simple negligence is not evidence of gross negligence." *Id.* "Conversely, some evidence of care does not defeat a gross-negligence finding." *Id.* (citing *Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 595 (Tex. 1999)).

"A corporation may be liable in punitive damages for gross negligence only if the corporation itself commits gross negligence." *Ellender*, 968 S.W.2d at 921. The Texas Supreme Court "has developed tests for distinguishing between acts that are solely attributable to agents or employees and acts that are directly attributable to the corporation." *Id.* (citing *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387 (Tex. 1997)). "A corporation is liable for punitive damages if it authorizes or ratifies an agent's gross negligence or if it is grossly negligent in hiring an unfit agent." *Id.* Texas has "embraced section 909 of the *Restatement of Torts* as stating the general rule of Texas." *Hammerly Oaks*, 958 S.W.2d at 391 (citing *King v. McGuff*, 234 S.W.2d 403, 405 (Tex. 1950)). "'Punitive damages can properly be awarded against a master or other principal because of an act by an agent, but only if: (a) the principal authorized the doing and the manner of the act, or (b) the agent was unfit and the principal was reckless in employing him, or (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or (d) the employer or manager of the employer ratified or approved the act.'" *Id.* (quoting Restatement of Torts § 909 (1939)).

Texas "has long recognized that the purpose of punitive damages is to protect society by punishing the offender rather than to compensate the injured party." *Id.* (citing *Fort Worth Elevators Co. v. Russell*, 70 S.W.2d 397, 403 (Tex. 1934)). "A corollary to that principle of law is that punitive damages are warranted only when the act is that of the corporation rather than the act of its 'ordinary servants or agents.'" *Id.* "In explaining the dichotomy between the doctrine of

respondeat superior and the liability of a corporation for its own actions [the Texas Supreme Court] has used the construct of 'vice principal.'" *Id.* (quoting *Forth Worth Elevators*, 70 S.W.2d at 406). "'Vice principal' encompasses: (a) corporate officers; (b) those who have authority to employ, direct, and discharge servants of the master; (c) those engaged in performance of nondelegable or absolute duties of the master; and (d) those to whom the master has confided the management of the whole or a department or a division of the business." *Ellender*, 968 S.W.2d at 922 (quoting *Hammerly Oaks*, 958 S.W.2d at 391). "Whether the corporation's acts can be attributed to the corporation itself, and thereby constitute corporate gross negligence, is determined by reasonable inferences the factfinder can draw from what the corporation did or failed to do and the facts existing at relevant times that contributed to a plaintiff's alleged damages." *Id.* (citing *Bowman v. Puckett*, 188 S.W.2d 571, 574 (Tex. 1945)).

**IV.   ANALYSIS**

Defendant Iron Tiger argues that there is insufficient evidence in the record of either the objective or subjective elements of gross negligence. *See* Def.'s Mot. Partial Summ. J. 4, ECF No. 23. Defendant Iron Tiger argues that even assuming Defendant Bunton drove his truck while in a fatigued state, there is no evidence that Defendant Iron Tiger's acts or omissions involved an extreme degree of risk, or that Defendant Iron Tiger was subjectively aware of such a risk. *Id.* at 4-5. Plaintiffs argue that Defendant Iron Tiger was subjectively aware of the extreme degree of risk created when truck drivers violate federal hours of service regulations, and was consciously indifferent to such risk by failing to have a system in place to ensure compliance. *See* Pls.' Resp. Def.'s Mot. Partial Summ. J. 27, ECF No. 28.

The Federal Motor Carrier Safety Regulations ("FMCSR") govern, *inter alia*, the hours of

service a commercial driver may operate without rest, and imposes reporting obligations on both the driver and the motor carrier. *See* 49 C.F.R. §§ 390.11, 392.3, 395.3. The FMCSR provide that "[n]o driver shall operate a commercial motor vehicle, and a motor carrier shall not require or permit a driver to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle." *See* 49 C.F.R. § 392.3. Specifically, the regulations provide that:

> Subject to the exceptions and exemptions in § 395.1:
>
> > (a) No motor carrier shall permit or require any driver used by it to drive a property-carrying commercial motor vehicle, nor shall any such driver drive a property-carrying commercial motor vehicle:
> >
> > > (1) More than 11 cumulative hours following 10 consecutive hours off-duty;
> > >
> > > (2) For any period after the end of the 14 hour after coming on duty following 10 consecutive hours off duty, except when a property-carrying driver complies with the provisions of § 395.1(o) or § 395.1(e)(2).

*See* 49 C.F.R. § 395.3. To ensure compliance "every motor carrier shall require every driver used by the motor carrier to record his/her duty status for each 24 hour period" by either having every driver "record his/her duty status, in duplicate, for each 24-hour period" or by having every driver use "a commercial motor vehicle equipped with either an automatic on-board recording device . . . . or an electronic on-board recorder." *See* 49 C.F.R. § 395.8. The FCMSR note that any time "a duty is prescribed for a driver or a prohibition is imposed upon the driver, it shall be the duty of the motor carrier to require observance of such duty or prohibition." *See* 49 C.F.R. 390.11.

Plaintiffs argue that the deposition testimony of Iron Tiger CEO Tom Duvall, Garland Terminal Manager John Carter, and Iron Tiger Vice President David Bross illustrates that Defendant Iron Tiger knew of but was consciously indifferent to the extreme risk of driver fatigue. Mr. Duvall is the majority owner, President, and CEO of Defendant Iron Tiger. *See* Pls.' Resp. Def.'s Mot. Partial Summ. J. 19, ECF No. 28. He testified that the purpose of the hours of services regulations is to keep tired drivers off the road. *Id.* Plaintiffs argue that this shows that Defendant Iron Tiger was subjectively aware of the extreme risk posed by allowing fatigued drivers on the road. *Id.* John Carter is the terminal manager of Defendant Iron Tiger's Garland facility and spoke to Defendant Bunton when he arrived at Garland following his drive from Joplin, Missouri in the early morning hours of March 18, 2010. *Id.* Mr. Carter stated that Ms. Rompf never called him regarding any hours of service violations by any of his drivers, and has never spoken to Ms. Rompf. *Id.* Mr. Carter questioned Defendant Bunton on the morning of March 18, 2010 regarding how long he had been on the road and how long he had been driving. *Id.* Defendant Bunton insisted he had only been on the road for five and one half hours. *Id.* Finally, Mr. Carter stated that Iron Tiger drivers are paid fifty-five (55) cents per mile driven. *Id.*

Mr. Bross is the Vice President of Risk Management for Iron Tiger. *Id.* 9. Mr. Bross testified that he is responsible for safety. *Id.* Mr. Bross testified that Tracy Rompf is in charge of the hours of service logs submitted by Iron Tiger's drivers. *Id.* at 10. According to Mr. Bross, Ms. Rompf is the only person at Defendant Iron Tiger in charge of systematically reviewing and analyzing driver logs and is in charge of auditing those logs. *Id.* At the time of the accident, Ms. Rompf had been with Defendant Iron Tiger for 20 months. *Id.* She had not worked with driver logs prior to her employment with Defendant Iron Tiger. *Id.* Mr. Bross stated that no one reviews Ms.

9

Rompf's work and that he himself would feel uncomfortable doing so. *Id.* Mr. Bross further stated that he could not recall any driver log issues identified by Ms. Rompf, nor was he aware of any reprimand issued to any driver due to problems with their logs. *Id.* However, Mr. Bross also testified that drivers were given hours of service training and told they were responsible for accurately logging their hours in accord with federal hours of service regulations. *Id.* at 11. He further stated that Ms. Rompf was charged with overseeing and auditing log books to ensure compliance. *Id.*

Plaintiffs then cite to a series of cases from various jurisdictions in their brief and argue that imposing punitive damages upon a corporation in a truck accident cases involving hours of service violations is proper. *See* Pls.' Resp. Def.'s Mot. Partial Summ. J. 22-26, ECF No. 28. Plaintiffs first cite to *USA Truck, Inc. v. West*, in which the Texarkana Court of Appeals upheld an award of punitive damages against a truck driver. 189 S.W.3d 904 (Tex. App.–Texarkana 2006, pet. denied). In *USA Truck*, the defendant truck driver attacked the legal sufficiency of the jury's award of punitive damages on the grounds that there was insufficient evidence of malice.[3] *Id.* at 906-07. In *USA Truck*, "[o]n a dark and moonless night, [the defendant truck driver] backed a seventy-five-foot-long tractor-trailer across two lanes of traffic on a four-lane urban highway." *Id.* at 908. Additionally, evidence was presented that the truck driver drove longer than was allowed under the federal regulations. *Id.* The court found that the truck driver's maneuver involved an extreme degree of risk to oncoming traffic and that, given his testimony, the truck driver knew of such risk. *Id.* at 908-09. *USA Truck*, however, is distinguishable from the instant case. In *USA Truck*, the

---

[3] At the time of *USA Truck* "the statutory definition of 'malice' included an alternative gross negligence component" identical to the current statutory definition of gross negligence. *See USA Truck*, 189 S.W.3d at 907. The Court of Appeals analyzed the legal sufficiency of the evidence under the gross negligence definition of malice. *Id.*

Court of Appeals analyzed the legal sufficiency of an award of damages against the truck driver involved in the collision, not his employer. *Id.* As Plaintiffs note, the court stated that the driver's fatigue and his violation of the hours of service regulations were factors to be considered in assessing whether the truck driver's actions involved an extreme degree of risk. *Id.* However, that extreme fatigue may be considered in assessing the gross negligence of the driver is irrelevant to the question posed by Defendant's motion.

Plaintiffs next rely on *Elbar, Inc. v. Claussen*, in which the Dallas Court of Appeals determined that there was legally sufficient evidence for the jury's finding of gross negligence against a truck driver's corporate employer. 774 S.W.2d 45 (Tex. App.–Dallas 1989, writ dism'd). In *Elbar*, the parents of a motorcyclist who was in a fatal accident with a truck driver in the Dallas area brought a wrongful death action against the driver and his corporate employer. *Id.* at 47. The driver drifted into the wrong lane and forced the motorcyclist to swerve, resulting in his tragic death. *Id.* Applying the common law gross negligence standard used in Texas prior to codification of the current gross negligence standard, the Court of Appeals found that the corporation was consciously indifferent to the extreme risk of driver fatigue. *Id.* The court listed several reasons why the Defendant corporation was consciously indifferent, the most important of which was that the sleeper-driver method used by the Defendant was inherently dangerous. *Id.* 48-49. The "sleeper-driver"method employed by Elbar allowed a truck to stay on the road for days on end by allowing drivers to sleep in the berths of their trucks while their partner drove the truck. *Id.* at 48. This method of alternating drivers allowed Elbar's trucks to make extremely long trips without breaks or delays. *Id.* The court found that the sleeper-driver method was not generally practiced in the trucking industry, that it was very difficult for drivers to get adequate rest on the road in the sleeper

11

berth because of noise and movement, and that drivers using the sleeper-driver method generally suffer from fatigue earlier in drives and with more ill effects. *Id.* The court also noted that Defendant Elbar allowed drivers to log hours in contravention of Department of Transportation requirements. *Id.*

While some of the factors listed by the Court in *Elbar* are present in this case, for example Defendant Bunton allegedly did not receive adequate rest and was operating his truck in violation of federal regulations, *Elbar* is nonetheless distinguishable. Leaving aside that *Elbar* applied a now-defunct common-law definition of gross negligence, the facts of the case are well out of proportion with the facts of this case. In *Elbar*, the corporate employer used the inherently dangerous sleeper-driver method, in contravention of industry standards. That method put a premium on keeping drivers on the road for long periods of time without rest. Moreover, there was evidence that Elbar allowed drivers to operate their trucks in violation of Department of Transportation regulations. In the instant case, despite allegations regarding the quality of audits, there is no evidence that Defendant Iron Tiger encouraged or condoned violation of the Federal Regulations.

Plaintiffs also cite to a series of cases from other jurisdictions that do not apply Texas law and argue that ineffective policing of driver logs can constitute gross negligence. *See* Pls.' Resp. Def.'s Mot. Partial Summ. J. 24-25, ECF No. 28. These cases do not rely on the Texas statutory definition of gross negligence and, to the extent such definitions are facially similar, those cases rely on entirely independent lines of case law. The Court finds that these cases are neither controlling nor interpretive of Texas gross negligence law.

In this case, Plaintiffs must prove the gross negligence of Defendant Iron Tiger by clear and convincing evidence in order for an award of exemplary damages to be proper. *See* Tex. Civ. Prac.

12

& Rem. Code § 41.003(a). "'Gross negligence' means an act or omission: (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others and (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others." *See* Tex. Civ. Prac. & Rem. Code § 41.001(11). Even on summary judgment, Plaintiffs must therefore produce evidence "'sufficient to produce in the mind of the fact finder a firm belief or conviction as to the truth of the allegation" that Defendant Iron Tiger's acts or omissions regarding driver audits involved an extreme degree of risk, and that Defendant Iron Tiger knew of and was consciously indifferent of such risk. *See Perez Librado*, No. 3:02-CV-2095-D, 2004 WL 1490304, at *2 (quoting *Foley*, 68 S.W.3d at 880). To be consciously indifferent requires showing that the defendant "knew about the peril, but its acts or omissions demonstrated that it did not care." *Lewis Constr.*, 70 SW.3d at 785.

In the instant case, even making all reasonable inferences in favor of Plaintiffs, there is no genuine issue of material fact regarding Defendant Iron Tiger's gross negligence. Viewing the evidence in the light most favorable to Plaintiffs, Defendant Iron Tiger did not disregard the risk of fatigued drivers. They gave their drivers training, conducted audits of driver logs, did not condone or encourage violation of the safety regulations, and did not pay drivers based on the amount of hours driven. Moreover, unlike in *Elbar*, Defendant Iron Tiger did not employ the inherently dangerous sleeper-driver method. Additionally, there is no evidence that Defendant Iron Tiger condoned or ratified Defendant Bunton's conduct. Even assuming that Defendant Iron Tiger's acts or omissions regarding driver audits involved an extreme degree of risk, there is insufficient evidence that Defendant Iron Tiger was indifferent to that risk or did not care about that risk.

Accordingly, the extant summary judgment evidence is insufficient to raise a fact issue regarding the gross negligence of Defendant Iron Tiger.

## V. CONCLUSION

Accordingly, Defendant Iron Tiger's Motion for Partial Summary Judgment on Plaintiffs' claim for exemplary damages is hereby **GRANTED**.  It is therefore **ORDERED** that Plaintiffs' claim for exemplary damages against Defendant Iron Tiger is hereby **DISMISSED** with prejudice.

**SO ORDERED** on this **5th** day **April, 2011.**

_____
**Reed O'Connor**
**UNITED STATES DISTRICT JUDGE**